UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILORAD OLIC, | No. 2:16-cv-0720 JAM AC P |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| JEFFREY BEARD et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court are defendants' motions for summary judgment.[1] ECF Nos. 55, 58. Plaintiff has opposed both motions. ECF Nos. 57, 60.

I. Plaintiff's Allegations

After screening, the complaint proceeded on plaintiff's retaliatory transfer claim against defendant Lizarraga and excessive force claim against defendant Payne. ECF No. 18. Relevant to those claims, plaintiff alleges that on March 26, 2015, Lizarraga told plaintiff he was going to be transferred. ECF No. 1 at 5-6. About a month and a half later, plaintiff was forcibly removed from his cell at Mule Creek State Prison ("MCSP") and transferred to High Desert State Prison ("HDSP"). Id. at 6. The transfer was allegedly in retaliation for a habeas petition that plaintiff

---

[1] Defendants Payne and Lizarraga are represented by separate counsel and therefore filed separate motions.

was pursuing at the time and other lawsuits that he had filed. Id. at 5-6. Upon arrival at HDSP, plaintiff spent about fifteen minutes in a holding cell before defendant Payne unlocked his cell and told him to face the wall. Id. at 3, 6, 11-12, 23. Payne proceeded to hit plaintiff's head against the wall until he lost consciousness, and when he regained consciousness, he was in a pool of blood. Id.

### I. Defendants' Motions for Summary Judgment

#### A. Defendants' Arguments

Defendants Payne and Lizarraga both move for summary judgment on the ground that plaintiff did not exhaust his administrative remedies before filing suit. ECF Nos. 55, 58. Payne argues that plaintiff's third level appeal of the grievance relevant to his excessive force claim was cancelled as untimely and therefore did not exhaust his administrative remedies. ECF No. 55-3 at 4-6. He further argues that even if plaintiff's grievance was incorrectly cancelled, plaintiff failed to exhaust his administrative remedies because he could have challenged the cancellation of his grievance. Id.; ECF No. 59. Lizarraga argues that plaintiff's third level appeal of the grievance relevant to his transfer was rejected and that plaintiff did not take the corrective action necessary and resubmit his grievance. ECF No. 58-1 at 17-18. In addition to his exhaustion argument, Lizarraga argues that plaintiff cannot establish any of the elements required for his retaliation claim.[2] Id. at 19-20.

#### B. Plaintiff's Responses

At the outset, the court notes that plaintiff's responses fail to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file separate documents in response to defendants' statements of undisputed facts that identify which facts are admitted and which are disputed, as required by

////

---

[2] Lizarraga also argues that any claims against him in his official capacity are barred by the Eleventh Amendment. ECF No. 58-1 at 20-21. However, in his response, plaintiff states that his claims are against Lizarraga in his individual capacity only. ECF No. 60 at 5.

Local Rule 260(b), though his response to defendant Lizarraga's motion has partially complied with this requirement.

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted).

Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions which have evidentiary support in the record will be considered.

In response to defendant Payne's motion, plaintiff argues that administrative remedies at the third level of review were unavailable to him because prison administrators thwarted his efforts by refusing to mail his grievance for more than thirty days after he submitted it and improperly cancelling his grievance as untimely. ECF No. 57 at 1-4. In response to defendant Lizarraga's motion, he argues that administrative remedies were unavailable to him because prison administrators thwarted him through machination and that there is a genuine issue of material fact as to his retaliation claim. ECF No. 60 at 1-5.

II.   Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden

3

of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

4

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants' motions for summary judgment were accompanied by notices of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 55-1; ECF No. 58-14; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

III. Legal Standards for Exhaustion

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

5

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 578 U.S. 632, 638 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204, 216 (2007). "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citations and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 578 U.S. at 639. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

As long as some potential remedy remained available through the administrative appeals

process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168.

IV. California Regulations Governing Exhaustion of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process is set forth in the California Code of Regulations. In 2015, those regulations allowed prisoners to "appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2015).

At the time plaintiff was proceeding through the appeals process, it was comprised of three levels of review for most types of appeals. Id. § 3084.7. "The second level [was] for review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level, or for which the first level [was] otherwise waived by [the] regulations." Id. § 3084.7(b). Relevant to the issues here, the third level was "for review of appeals not resolved at second

level," "appeals [that] alleged third level staff misconduct," and "appeals [of] a third level cancellation decision or action." Id. § 3084.7(c). An inmate was required to "submit the appeal within 30 calendar days of: (1) The occurrence of the event or decision being appealed, or; (2) Upon first having knowledge of the action or decision being appealed, or; (3) Upon receiving an unsatisfactory departmental response to an appeal filed." Id. § 3084.8(b).

Each prison was required to have an "appeals coordinator" whose job was to "screen all appeals prior to acceptance and assignment for review." Id. § 3084.5(a), (b). If an appeal described staff misconduct, a determination would be made whether it should be processed as a routine appeal, processed as a staff complaint appeal inquiry, or referred to Internal Affairs for investigation or inquiry. Id. § 3084.5(b)(4). The appeals coordinator could also refuse to accept an appeal, whereupon "the inmate or parolee [would] be notified of the specific reason(s) for the rejection or cancellation of the appeal and of the correction(s) needed for the rejected appeal to be accepted." Id. § 3084.5(b)(3). An appeal could be rejected if it was "missing necessary supporting documents as established in section 3084.3" or cancelled if "[t]ime limits for submitting the appeal [were] exceeded even though the inmate or parolee had the opportunity to submit within the prescribed time constraints." Id. § 3084.6(b)(7), (c)(4). A rejected appeal could "later be accepted if the reason noted for the rejection [was] corrected and the appeal [was] returned by the inmate or parolee to the appeals coordinator within 30 calendar days of rejection." Id. § 3084.6(a)(2). A cancelled appeal could not be accepted unless it was determined that the cancellation was in error or new information made the appeal eligible for further review. Id. § 3084.6(a)(3), (e). However, the cancellation of the appeal could be separately appealed. Id. § 3084.6(e). "[A] cancellation or rejection decision [did] not exhaust administrative remedies." Id. § 3084.1(b).

V.  Undisputed Material Facts

   A.  The Parties

At all times relevant to the complaint, plaintiff was a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). ECF No. 1; DF Payne's Statement of Undisputed Facts ("Payne SUF") (ECF No. 55-2) ¶ 1; DF Lizarraga's Statement of

8

Undisputed Facts ("Lizarraga SUF") (ECF No. 58-2) ¶ 1. At all times relevant to the complaint, defendant Payne was employed as a correctional officer at HDSP and defendant Lizarraga was the warden at MCSP. Payne SUF ¶ 2; Lizarraga SUF ¶ 4.

### B. Transfer from MCSP to HDSP

On March 26, 2015, Lizarraga was the chairperson of plaintiff's Institution Classification Committee (ICC) hearing. Lizarraga SUF ¶ 6. The ICC reviewed custody status and made housing and placement recommendations consistent with the criteria in Title 15 of the California Code of Regulations and the CDCR Department Operations Manual. Id., ¶ 7. Prior to the hearing, plaintiff was issued a notice of hearing for review and consideration of his "Subsequent ASU; ASU Extension, Transfer; and Determinate SHU Term" and notified that transfer was one of the options under review and consideration. Id., ¶ 8.[3] The ICC hearing was part of the regular procedure to meet with an inmate following the imposition of a Secure Housing Unit (SHU) term to review the inmate's placement and housing. Id., ¶¶ 8, 13.

Plaintiff was identified as a program failure because he had a history of serious rules violation reports (RVRs). Id., ¶ 14.[4] He had previously appeared before the ICC to address three RVRs—one for refusing a cellmate and two for refusing to move to Facility A—and during the March 26, 2015 ICC hearing, the committee documented that plaintiff had another incident of refusing to move to Facility A and had recently been disciplined for refusing a drug test. Id., ¶¶ 10, 14. The day before the ICC hearing, plaintiff's counselor asked if he wanted to be moved to the general population in Facility A and he refused. Id., ¶ 15. At the hearing, plaintiff reiterated that he did not want to return to the general population in Facility A. Id., ¶ 18.

When the ICC asked about his refusal to house on Facility A, plaintiff stated that "he did not want to be housed in the general population because he feared for his safety" because of the warden, associate warden, and captain. Id., ¶ 14. He also stated that he was unwilling to go back to the general population because correctional officers "tried to put an assassin in [his] cell." Id.,

---

[3] Plaintiff disputes Lizarraga SUF ¶ 8 only to the extent he disagrees as to the date the notice was issued. ECF No. 60 at 7. Lizarraga SUF ¶ 8 is otherwise undisputed.
[4] Plaintiff disputes Lizarraga SUF ¶ 14 only to the extent he disagrees as to why he was transferred out of MCSP. ECF No. 60 at 7. Lizarraga SUF ¶ 14 is otherwise undisputed.

¶ 19. Lizarraga asserts that plaintiff's expressed fear of the warden, associate warden, and captain was a factor in the ICC's recommendation that plaintiff be transferred out of MCSP because transfer out of MCSP would potentially make him feel safer. Id., ¶ 14. Plaintiff disputes this claim and asserts that he was transferred because of his lawsuits. ECF No. 60 at 7.

In attempting to find appropriate housing for plaintiff, the ICC reviewed various portions of his prison record, including plaintiff's most recent mental health assessment, the abstract of judgment for his committing offense, and documentation related to his enemies, prior disciplinary and violent incidents, gang affiliations, and whether he was a designated sex offender. Lizarraga SUF ¶¶ 21-23. Plaintiff's records indicated that he had been in the mental health population since his incarceration began in 2012, and the ICC determined that his classification score placed him at Level IV—the highest security and most restrictive custody level—and that his classification score was substantially above the criteria for Level IV placement. Id., ¶¶ 22, 24-25. Prior to the March 26, 2015 ICC hearing, plaintiff was told and understood that he could not be housed in B yard unless he submitted to drug tests, which he refused to take, resulting in disciplinary action. Id., ¶ 16. During his entire period of incarceration prior to the hearing, plaintiff had only had a cellmate for about a month in 2011-2012 and had had altercations each time he was assigned a cellmate. Id., ¶ 17.

At the time of plaintiff's ICC hearing, the ICC was following directives and policy goals attempting to limit administrative segregation time for inmates in the mental health care delivery system. Id., ¶ 26. The ICC recommended plaintiff be transferred to Salinas Valley State Prison (SVSP) Level IV Sensitive Needs Yard (SNY) with an alternative transfer to HDSP Level IV SNY and that the remainder of plaintiff's three separate SHU terms be suspended. Id., ¶ 28. Lizarraga asserts that, in light of plaintiff's repeated refusal to return to the general population facility at MCSP, the ICC attempted to find a facility where plaintiff would feel safe and that would also meet safety and security needs for his custody level, meet his mental health treatment needs, and comply with the goal of reducing prolonged housing in administrative segregation for inmates receiving mental health care. Id., ¶ 27. Plaintiff disputes that he was sent to a facility where he would feel safe and asserts that he was moved because he had an enemy on Facility A.

ECF No. 60 at 7. Plaintiff was advised of the recommendation that he be referred for transfer to another institution. Lizarraga SUF ¶ 30.[5] The final decision for plaintiff's placement was referred to the classification staff representative, who independently reviewed the recommendation and approved plaintiff for transfer to HDSP-IV (270/SNY). Id., ¶¶ 28, 31, 33, 35-38, 40. Lizarraga had no communication with the classification staff representative other than forwarding the March 26, 2015 Classification Committee Chrono. Id., ¶¶ 39-40.

### C. Inmate Appeals

On May 24, 2015, plaintiff submitted a first level appeal addressing the alleged retaliatory transfer by Lizarraga and assault by Payne. ECF No. 1 at 7. At some point after it was submitted, the appeal was split into two appeals: (1) Appeal No. HDSP-15-01478, which was sent to HDSP to address the alleged assault, and (2) Appeal No. MCSP-15-01554, which was sent to MCSP to address the cell extraction and transfer. Id.; ECF No. 55-5 at 106.[6] The appeal requested "full investigation into this incident and [plaintiff's] return to Mule Creek Prison." ECF No. 55-5 at 106.

#### 1. HDSP-15-01478

HDSP categorized plaintiff's grievance against defendant Payne as a staff complaint and partially granted the grievance at the first level of review. ECF No. 55-4 at 16-17. The first level response stated that an appeal inquiry was completed and found no violation of CDCR policy. Id. at 16. The response also stated that

> [i]f you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, your administrative remedies will be considered exhausted.

Id. at 17.

---

[5] In response to Lizarraga SUF ¶ 30, plaintiff states that "Lizarraga told me that he will put me on a bus" and that plaintiff replied that would be retaliation for his lawsuits, at which point he was dismissed. ECF No. 60 at 7. These statements do not actually dispute the contents of Lizarraga SUF ¶ 30, which is therefore deemed undisputed.

[6] Comparison of the first level appeals shows that they are identical, compare ECF No. 55-4 at 10, 14 with ECF No. 55-5 at 106, 108, and Appeal No. MCSP-15-01554 includes a notation regarding the division of the appeal, ECF No. 55-5 at 106.

Plaintiff submitted his appeal for second level review on July 23, 2015, arguing that the evidence clearly showed that Payne had assaulted him and that policy had been violated, id. at 11-12, and the appeal was partially granted, id. at 18-19.  The response stated that the appeal inquiry decision made at the first level had been reviewed and that "[n]o interviews were conducted at the Second Level of Review as no new pertinent information was received." Id. at 18.  The response further stated that plaintiff "failed to provide any documentation, evidence, or witnesses that could corroborate [his] allegations.  Therefore, this reviewer agrees with the First Level of Review."  Id. at 19.  The response also included the same notice regarding exhaustion as the first level response.  Id.

The second level response was dated August 11, 2015, and the paperwork indicates that it was mailed or delivered to plaintiff on August 31, 2015.  Id. at 11, 18-19.  Plaintiff states that at the time the response was issued he was housed at California State Prison ("CSP")-Sacramento, and the response was not received at CSP-Sacramento until September 4, 2015, the same day he was transferred back to HDSP.[7]  ECF No. 57 at 3-4.  Upon his return to HDSP, plaintiff was initially held in administrative segregation and then placed in a mental health crisis bed.  Id. at 4.  As a result, he did not receive the second level response until September 25, 2015.  Id.  On October 21, 2015, plaintiff submitted his appeal to be mailed for third level review, and was subsequently transferred to CSP-Corcoran on October 29, 2015.  Id.  The HDSP mail room processed and mailed plaintiff's appeal on November 23, 2015.  Id.

On February 10, 2016, plaintiff's third level appeal was cancelled as untimely.  ECF No. 55-4 at 9; Payne SUF ¶ 6.  The response stated that the appeal was untimely because the response was returned to plaintiff on August 31, 2015, but the appeal package was not submitted to the appeals office until November 30, 2015.  ECF No. 55-4 at 9.  It further informed plaintiff that he could appeal the cancellation of his grievance by submitting a separate appeal within thirty calendar days from the date of the cancellation.  Id.  The cancellation also included an advisement

---

[7] Plaintiff has provided documentary evidence in support of his claims regarding the timing of his receipt of the second level response and his submission of a third level response, ECF No. 57 at 5-9, and defendant Payne did not dispute these facts in his reply, ECF No. 59.  As such, these facts are deemed undisputed for the purpose of deciding the motion for summary judgment.

1 that "once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. . . . The original appeal may only be resubmitted if the appeal on the cancellation is granted." Id. Plaintiff did not appeal the cancellation. Payne SUF ¶ 8; ECF No. 57 at 3.

### 2. MCSP-15-01554

In addressing the cell extraction and transfer, MCSP processed plaintiff's grievance against defendant Lizarraga as a routine appeal and it was partially granted at the first level of review. ECF No. 58-10. The response indicated that the transfer had been reviewed, plaintiff had "made no allegations of unnecessary, inappropriate, or excessive force," and "there [was] not enough information to meet the threshold for an investigation." Id. at 3. It further notified plaintiff that he could contact his assigned correctional counselor about his eligibility for transfer back to MCSP. Id.; Lizarraga SUF ¶ 50.

Plaintiff appealed the first level response on the ground that it failed to investigate whether the transfer was authorized and that the claim that he had not alleged excessive force was a lie. ECF No. 55-5 at 107, 109. The second level response found that plaintiff had "provided no evidence to support his claims that the cell extraction was unauthorized . . . or that he was transferred in retaliation for filing lawsuits" and was "partially granted in that an appeal inquiry has been conducted into the appellant's allegations and the IERC reviewed the cell extraction that occurred on 05/05/15." Lizarraga SUF ¶ 51; ECF No. 58-11 at 3. The response further advised that the "issue may be submitted to the Third Level of Review if desired." ECF No. 58-11 at 4.

Plaintiff submitted an appeal for third level review on October 9, 2015. ECF No. 1 at 33. The appeal was mailed in four envelopes, clearly indicated that it was in four parts, and included copies of the first and second administrative reviews and the incident report.[8] Id. at 7; ECF No. 60 at 2. A response dated February 2, 2016, was mailed to plaintiff and stated that the appeal was

---

[8] Although the parties appear to dispute whether the appeals office received documentation from plaintiff and what documentation was necessary for the appeal, they do not appear to dispute plaintiff's claims regarding the mailing of the four envelopes or their contents, and these facts are therefore deemed undisputed. See Lizarraga SUF ¶¶ 53-54; ECF No. 60 at 8.

rejected because he had failed to include necessary supporting documents. Lizarraga SUF ¶ 52.[9] The notice identified the four documents plaintiff's appeal was missing and stated that he could request copies from his counselor if necessary. ECF No. 58-12. It also included the following advisement: "Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b)." Id. At the time the rejection notice was sent, the appeals office returned only three of the four envelopes that plaintiff had submitted, and the fourth envelope was not returned until almost one year later. ECF No. 60 at 2. Plaintiff did not resubmit his third level appeal. Lizarraga SUF ¶ 52.

VI. Discussion

A. Exhaustion

It is undisputed that the CDCR's administrative remedy process generally requires inmates to proceed through three levels of review to exhaust an inmate appeal and that plaintiff failed to submit an inmate appeal that was accepted at the third level. Defendants have thus satisfied their initial burden under Albino, supra, of demonstrating a failure to complete the state's exhaustion process. See Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (a California inmate exhausts administrative remedies by obtaining a decision at each of the three available levels of review). Accordingly, the burden shifts to plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

In opposition to both motions for summary judgment, plaintiff argues that he was excused from exhaustion by the exceptions outlined in Ross v. Blake, supra. ECF Nos. 57, 60. Specifically, he argues that prison administrators thwarted him from taking advantage of the

---

[9] The notice also advised that a cancellation decision could be separately appealed, ECF No. 58-12, and defendant Lizarraga states that plaintiff failed to separately appeal the cancellation of his appeal, Lizarraga SUF ¶ 52. Plaintiff disputes Lizarraga SUF ¶ 52 to the extent it claims that the appeal was cancelled. ECF No. 60 at 8. Since it is clear from the evidence presented that plaintiff's appeal was rejected, not cancelled, any arguments related to plaintiff's obligation to separately appeal the cancellation of Appeal No. MCSP-15-01554 will be disregarded and Lizarraga SUF ¶ 52 is deemed otherwise undisputed.

14

1  grievance process for both inmate appeals.  ECF No. 57 at 2-3; ECF No. 60 at 2.

2  With respect to the appeal against Payne, plaintiff argues he was thwarted from taking advantage of the administrative appeals process because prison officials refused to process and mail his appeal until after the deadline to respond had passed and improperly denied it as untimely.  ECF No. 57 at 3-4.  Plaintiff's allegations regarding the timeliness of his third level appeal, which Payne does not challenge, demonstrate that his appeal was timely because it was submitted within thirty days of receiving notice of the second level response.  Thus, the cancellation for untimeliness was improper, giving plaintiff grounds to appeal the cancellation on the basis that it was in error.  Because plaintiff had the ability to appeal the cancellation of his third level appeal, his admitted failure to do so renders his appeal against Payne unexhausted.  See Wilson v. Zubiate, 718 F. App'x 479, 481-82 (9th Cir. 2017) (even assuming cancellation of grievance was improper, prisoner failed to exhaust his administrative remedies when he did not appeal cancellation); Cortinas v. Portillo, 754 F. App'x 525, 527 (9th Cir. 2018) (some remedy remained available because prisoner could have appealed cancellation decision); Hunter v. Sorheim, No. 2:15-cv-9253 DMG SK, 2018 WL 1475034, at *2-3, 2018 U.S. Dist. LEXIS 49714, at *6-10 (C.D. Cal. Feb. 27, 2018) (where grievance was cancelled as untimely, plaintiff failed to exhaust administrative remedies because he could have appealed the cancellation), aff'd, 782 F. App'x 661 (9th Cir. 2019).

In regard to the appeal against Lizarraga, plaintiff argues his grievance was thwarted by machination when it was improperly rejected for failing to provide the necessary paperwork.  ECF No. 60 at 2-3.  He argues that since he had already submitted everything necessary to decide the appeal, it was pointless to resubmit the documents.  Id. at 2.  However, plaintiff alleges only that he submitted the "full second and first administrative reviews with entire incident report."  ECF No. 60 at 2.  While the incident report was one of the documents requested, the rejection notice also requested an RVR and two ICC classification chronos, ECF No. 58-12, which plaintiff admits he did not send because he felt they were irrelevant, ECF No. 58-9 at 24-25 ("Plus they requested some additional documents that—I don't know—why should I even provide those documents, you know?"); ECF No. 1 at 7 (rejection notice "requested documentation that has

15

nothing to do with an incident, occur[r]ed after incident and not related and I never referenced those events in my appeal").

Though plaintiff did not feel that the additional documents requested were relevant, the RVR and ICC meetings were referenced in the first level response, ECF No. 58-10, making the request for related documentation reasonable. Plaintiff's belief that the requested documentation was irrelevant does not make the rejection of his appeal unreasonable, and he could have resubmitted the rejected appeal with the requested documentation, which he was advised he could obtain copies of from his assigned counselor. See ECF No. 58-12. His failure to do so renders the appeal unexhausted. See Sapp v. Kimbrell, 623 F.3d 813, 826 (9th Cir. 2010) (administrative remedies were available and unexhausted where appeals were rejected for proper reasons, including failure to attach necessary supporting documents).

### B. Retaliation

Even assuming that plaintiff was excused from exhausting the administrative remedies process with respect to his appeal against Lizarraga, he has not shown that a genuine dispute of fact exists as to his retaliation claim.

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000); Barnett; 31 F.3d at 815-16). To prove retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. See McCollum v. Cal. Dep't Corr. Rehab., 647 F.3d 870, 882-83 (9th Cir. 2011); accord, Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of

motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. McCollum, 647 F.3d at 882 (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)).

Defendant Lizarraga has submitted largely undisputed evidence demonstrating that plaintiff's transfer was motivated by a valid penological reason. Furthermore, he has averred that at the time of the hearing he had no present awareness or knowledge that plaintiff had filed any lawsuits against him, the CDCR, or CDCR employees, and that the recommendation for transfer was made solely to advance legitimate correctional goals. Lizarraga SUF ¶¶ 44, 46-47; Lizarraga Decl. (ECF No. 58-4) ¶ 30. He also explains that, due to the large number of lawsuits in which he was named as a defendant because of his position as warden, such matters "were typically handled through CDCR counsel, the institution's Litigation Coordinator or the Warden's designated staff;" he was not personally involved in routine case handling matters or routine court orders that could be complied with by MCSP or CDCR staff; and he was only contacted if a matter required his personal involvement. See Lizarraga SUF ¶ 42; Lizarraga Decl. ¶ 28.

Although plaintiff disputes Lizarraga's knowledge and motivation, he fails to provide any evidence that would create a triable issue of fact. ECF No. 60 at 7. His assertion that Lizarraga stated he would put plaintiff "on a bus" and that plaintiff responded that such action would be retaliatory, ECF No. 60 at 7, even if true, does not demonstrate retaliatory motive on Lizarraga's part. Furthermore, plaintiff's claims that Lizarraga must have known about his lawsuits because the Attorney General's Office informs him of pending lawsuits and that counsel notified him of his lawsuit in Olic v. Lizarraga (Olic I), No. 2:14-cv-2120 KJM GGH (E.D. Cal.), are wholly speculative and unsupported by any evidence. ECF No. 60 at 7. Although the record in Olic I reflects that a few weeks prior to the ICC meeting an order was served on Lizarraga by mail and required Lizarraga or his designee to respond to claims that plaintiff was being denied access to his legal property (Olic I, ECF No. 14), there is no evidence that Lizarraga actually saw or was aware of the order or that he personally handled the response. Plaintiff's conclusory assertions that Lizarraga must have known do not create a jury question regarding the credibility of

Lizarraga's sworn statements about his knowledge and involvement in prisoner lawsuits.

VII.   Conclusion

For all these reasons, the court finds that (1) plaintiff has not exhausted his administrative remedies on his retaliation claim against either defendant and (2) the undisputed evidence shows that Lizarraga did not transfer plaintiff in retaliation for his filing of lawsuits.

VIII.   Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendants' motions for summary judgment be granted and this case be dismissed because you did not exhaust your grievance at the third level before starting this case and you have not shown that you were prevented from exhausting. With respect to defendant Lizarraga it is also being recommended that the motion for summary judgment be granted on the merits because you have not provided any evidence that Lizarraga has a retaliatory motive for transferring you out of MCSP.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motions for summary judgment (ECF Nos. 55, 58) be GRANTED.

2. The complaint be DISMISSED for failure to exhaust administrative remedies as to the claims against both defendants and alternatively on the merits as to the retaliation claim against defendant Lizarraga.

3. Judgment be entered for defendants.

4. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The

////

////

////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 31, 2022

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE